IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONNIE RICHARDSON,            )
                              )
    Plaintiff,                )
                              )
        v.                    )         1:09CV714
                              )
SHERIFF B.J. BARNES and       )
GUILFORD COUNTY,              )
                              )
    Defendants.               )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants' Motion to Dismiss (Docket Entry 12) and for a ruling on Defendants' Motion to Strike (Docket Entry 25). (See Docket Entries dated Feb. 3, 2010 and Apr. 2, 2012; see also Docket Entry dated Nov. 20, 2009 (assigning case to undersigned Magistrate Judge).) For the reasons that follow, the Motion to Dismiss should be granted in part and the Motion to Strike will be denied as moot.

**I. Background**

Without specifying the nature of the cause(s) of action Plaintiff wishes to pursue, the Complaint alleges that:

1) Plaintiff "was arrested on or about March 23, 2007 for a failure to appear on a child support case" (Docket Entry 2 at 2);

2) during processing, he "informed the intake nurse that [he] was injured and needed to be put on medical lockback" and understood that the jail had a record of his back injury (id.);

3) despite his request, Plaintiff was placed in general population (id.);

4) on March 27, 2007, while Plaintiff was taking a shower, he grabbed a shower handle in an attempt to hold himself up and the handle came off, causing Plaintiff to fall (id. at 2-3);

5) as a result of the fall, Plaintiff "broke [his] left thumb [and] [] hit [his] head so hard [he] [has] permanently lost vision in [his] right eye" (id. at 3);

6) jail officers took him to a doctor, who "didn't check [Plaintiff] for injuries [but] just gave [him] pain medication," despite the fact that Plaintiff complained about his thumb, head, and back (id.);

7) Plaintiff's request to visit a hospital was denied, although the doctor did schedule an x-ray (the results of which came back normal) (id.);

8) the x-ray would not have shown nerve damage, which a previous MRI at Triad Imaging had revealed (id.);

9) once Plaintiff got out of jail, he went to the emergency room and learned his left thumb "was calcified at the joint [and that] rebreaking it and setting it would cause more problems"

2

and as a result he would likely get arthritis in that (his dominant) hand (id.); and

10) Plaintiff also learned that the "only thing [the hospital staff] could do about [his] back was give [him] pain medicine" (id.).

The Complaint concludes that Defendants are liable because Plaintiff's "condition was not treated correctly [and] now [he is] worse off than before." (Id. at 4.) It further alleges that, even if the jail employees did not know about the broken shower handle, "not knowing doesn't mean they're not liable." (Id.)

Based on the foregoing allegations, it appears Plaintiff's Complaint - if viewed through the forgiving lens of liberal construction provided to pro se litigants, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (reiterating that "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citation and quotation marks omitted)) - alleges that Defendants subjected Plaintiff to conditions that violated his rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and that Defendants acted negligently in maintaining the jail facility and in providing medical care.

Defendants filed the instant Motion to Dismiss (Docket Entry 12), to which Plaintiff responded (Docket Entry 17) and Defendants

3

replied (Docket Entry 18). Defendants subsequently filed the instant Motion to Strike (Docket Entry 25) in response to two "affidavits" filed by Plaintiff (see Docket Entries 23, 24).[1] Both filings concern Plaintiff's medical condition(s). (See id.) In the first, Plaintiff describes his back injuries (Docket Entry 23 at 1-2) and includes a purported Social Security Administration benefits decision (Docket Entry 23-1). The second restates many of Plaintiff's conclusions (Docket Entry 24 at 1-3) and thereafter consists of a series of documents that again purportedly confirm the nature of Plaintiff's medical condition(s) and interactions with jail staff (id. at 5-13).

## II. Discussion

Under Federal Rule of Civil Procedure 12(b)(6), a complaint falls short if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more

---

[1] The two challenged filings are not in fact affidavits. "[A]n affidavit, by definition, is a statement reduced to writing and the truth of which is *sworn* to before someone who is authorized to administer an oath." Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) (emphasis in original) (internal quotation marks omitted). The documents Plaintiff submitted lack any indication that he swore to their truth before anyone authorized to administer an oath. (See Docket Entries 23, 24.) Nor did Plaintiff sign the documents under penalty of perjury pursuant to 28 U.S.C. § 1746. (See id.)

4

than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, Erickson, 551 U.S. at 94, the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of

misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)), cert. denied, 130 S. Ct. 2064 (2010).

### A. *Constitutional Claim(s) against Defendant Sheriff Barnes*

"As a pretrial detainee, [Plaintiff's] treatment and the conditions of his restraint are evaluated under the Due Process Clause of the Fourteenth Amendment." Robles v. Prince George's Cnty., Md., 302 F.3d 262, 269 (4th Cir. 2002); accord Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees."). In that regard, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by . . . the Due Process Clause." Id. at 200 (emphasis added).

However, not every injury suffered by a detainee while in custody results in constitutional liability for jail officials. Indeed, the United States Supreme Court expressly has "held that

6

the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." Davidson v. Cannon, 474 U.S. 344, 347 (1986). Plaintiff thus cannot maintain a constitutional claim against Defendants merely based on allegations that they negligently failed to maintain certain equipment in the jail because "lack of care simply does not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent," id. at 347-48.

Instead, this standard applies:

> First, a constitutional violation occurs only where the deprivation alleged is "objectively, sufficiently serious." For a claim based on a failure to prevent harm, a [plaintiff] must show that he [was] detained or incarcerated "under conditions posing a substantial risk of serious harm." . . . Second, an official must have "a sufficiently culpable state of mind." In prison[/jail]-conditions cases, the requisite state of mind is "deliberate indifference."

Brown v. Harris, 240 F.3d 383, 388-89 (4th Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)) (internal citations and secondary internal quotation marks omitted) (emphasis added).[2]

---

[2] As the Fourth Circuit has observed, Farmer "addressed only the duties of 'prison officials' under the Eighth Amendment. Farmer, however, merely defined the term 'deliberate indifference,' a standard previously employed by the Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976), and its progeny. See Farmer, 511 U.S. at 829. Farmer in no way undermined [the Fourth Circuit's prior] holding . . . that the same 'deliberate indifference' standard applies to both inmates and pretrial detainees. Indeed, other circuits have imported the Farmer framework into cases involving pretrial detainees." Brown, 240 F.3d at 388 n.6 (internal parallel citations omitted).

7

Plaintiff argues that he "proved that both Defendants were 'deliberately indifferent to a substantial risk of harm to a detainee' because [they] admitted to knowing of [Plaintiff's] previous back injury[.]"  (Docket Entry 17 at 6.)  However, as Defendants point out (see Docket Entry 13 at 5-8), Plaintiff's Complaint ascribes no conduct to Defendant Sheriff B.J. Barnes (see Docket Entry 2 at 2-4).  The Complaint only refers to Defendant Barnes in the caption and in the "PARTIES" section, which merely lists Defendants' names and their addresses.  (See id. at 1.) Plaintiff's Complaint fails to indicate that Defendant Barnes had any personal involvement in: (1) the decision to place Plaintiff in general population, despite his back injury; (2) Plaintiff's fall in the shower or the maintenance of the shower facility; or (3) the medical treatment Plaintiff received after the fall.  (See Docket Entry 2 at 2-4.)  The Complaint therefore fails to present a claim against Defendant Barnes in his individual capacity.[3]

The fact that Defendant Barnes supervises the individuals who actually operate the jail does not give rise to liability under § 1983.  See Smith v. Ray, 409 F. App'x 641, 650 (4th Cir. 2011) ("In § 1983 suits, neither municipalities nor supervisors can be held liable under theories of respondeat superior liability."

---

[3] Even if the Court considered Plaintiff's "affidavits," Plaintiff's claim would still fail.  The "affidavits" make no mention of any acts specifically attributable to Defendant Barnes. (See Docket Entries 23, 24.)

8

(citing Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978))). Although supervisory liability may exist under Section 1983 where

> (1) [] the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) [] the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) [] there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff,

Shaw v. Shroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted), the Complaint alleges the existence of none of these factors (see Docket Entry 2 at 2-4).

Further, to the extent Plaintiff has lodged the instant claim(s) against Defendant Barnes in his official capacity, i.e., against the local governmental entity of the Office of the Sheriff of Guilford County, "it must be shown that the actions of [Defendant Barnes] were unconstitutional and were taken pursuant to a custom or policy of the entity." Giancola v. State of W. Va. Dep't of Pub. Safety, 830 F.2d 547, 550 (4th Cir. 1987) (emphasis added) (citing Monell, 436 U.S. at 690-92); accord Board of Cnty. Comm'rs of Bryan Cnty., Okla., 520 U.S. 397, 403 (1997) ("[L]ocal governmental bodies . . . may not be held liable under § 1983 solely because [they] employ[] a tortfeasor. . . . Instead, in Monell and subsequent cases, [the Supreme Court] ha[s] required a plaintiff seeking to impose liability on a [local governmental

9

body] under § 1983 to identify a [local governmental] 'policy' or 'custom' that caused the plaintiff's injury."). Accordingly, Plaintiff must show that a "constitutional injury [wa]s proximately caused by a written policy or ordinance, or by a widespread practice that is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 954 (M.D.N.C. 2011), rev'd in part on other grounds, 703 F.3d 636 (4th Cir. 2012) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). Plaintiff's Complaint makes no allegation that the events it describes resulted from a policy or custom of the Sheriff's office. (See Docket Entry 2 at 2-4.)[4]

In sum, Plaintiff's Complaint fails to allege facts sufficient to maintain a Section 1983 claim against Defendant Barnes in either his individual or official capacity. The Court therefore should dismiss such claim(s) against Defendant Barnes.

### B. Constitutional Claim(s) against Defendant Guilford County

As with Defendant Barnes, Plaintiff's Complaint makes no mention of Defendant Guilford County except in the caption and in the "PARTIES" section. (See Docket Entry 2 at 1-2.) As previously discussed, Section 1983 liability attaches to a local governmental entity only where a plaintiff can show that a "constitutional injury [wa]s proximately caused by a written policy or ordinance,

---

[4] Nor do the supplemental documents provided by Plaintiff show the existence of any such policy or custom. (See Docket Entries 23, 24.)

10

or by a widespread practice that is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" McFadyen, 786 F. Supp. 2d at 954 (quoting Praprotnik, 485 U.S. at 127). Nowhere does Plaintiff's Complaint allege that a policy or custom of Defendant Guilford County led to the alleged violations of his constitutional rights. (See Docket Entry 2 at 2-4.)[5]

Plaintiff's Response to the instant Motion argues that

> The federal claim against Guilford County is as follows: Several Immunity acts limit government Immunity where a case involves a "Special Defect" which is a Premises Defect that is more dangerous than most because it presents an unusual and unexpected danger (Like the shower handle coming off). . . . The Government Entity can be liable for injuries resulting from the Special Defect if the government Entity knew or, in the "excersise [sic] of reasonable care" should have known of the problem. . . . This falls under premises liability!!!

(Docket Entry 17 at 3 (emphasis and erratic capitalization in original).) Premises liability, however, relates to state law claims based on negligence which, as previously discussed, cannot form the basis of this sort of claim. See Davidson, 474 U.S. at 347 ("[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property."); see also Thomas v. Weddle, 167 N.C. App. 283, 290, 605 S.E.2d 244, 249 (2004) (noting "premises liability and failure to warn of hidden dangers

---

[5] Plaintiff's supplemental "affidavits" similarly make no mention of a policy or custom that resulted in his alleged injuries. (See Docket Entries 23, 24.)

11

are claims based on a true negligence standard" (internal quotation marks omitted)). Plaintiff's Section 1983 claim(s) against Defendant Guilford County therefore fail(s) as a matter of law.

### C. State Law Claims

Plaintiff's only remaining claims - various theories of negligence - arise under state law. "[I]n any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In light of the recommended dismissal of the federal claims at the pleading stage and the absence of grounds for

12

the exercise of diversity jurisdiction,[6] the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and, instead, should dismiss those claims without prejudice.[7]

### III. Conclusion

Plaintiff has failed to plead sufficient facts to state a Section 1983 claim for violations of the Fourteenth Amendment against Defendant Barnes in either his individual or official capacity or against Defendant Guilford County. Moreover, the Court should exercise its discretion under 28 U.S.C. § 1367 to dismiss the remainder of Plaintiff's claims, which arise under state law, without prejudice.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 12) be granted in part in that Plaintiff's claim(s) under 42 U.S.C. § 1983 should be dismissed for failure to state a claim upon which relief can be granted.

---

[6] Plaintiff's Complaint indicates that all Parties are residents of Greensboro, North Carolina. (Docket Entry 2 at 1-2.) Such circumstances cannot satisfy the diversity jurisdiction statute. See 28 U.S.C. § 1331(a).

[7] To the extent statute of limitations concerns may apply to Plaintiff's refiling of the remaining claims in state court, 28 U.S.C. § 1367(d) provides: "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

13

**IT IS FURTHER RECOMMENDED** that Plaintiff's negligence claims be dismissed without prejudice to his pursuit of those claims in state court.

**IT IS ORDERED** that Defendants' Motion to Strike (Docket Entry 25) is **DENIED AS MOOT**.

>        /s/ L. Patrick Auld
>           **L. Patrick Auld**
>    **United States Magistrate Judge**

May 6, 2013